Thank you, Your Honor, and good morning. Donald Monroe for BNSF Railway. There's one important legal error that underlies many, not all, but many of the issues presented in this appeal. You can see it in the colloquy on the Rule 50 motion. Trial counsel asked for a ruling on the affirmative defense. This is in the excerpts of record at 27. He said, plaintiff has failed to raise any question about whether or not these things that BNSF relied upon were believed by the decision-makers at the time, and that's the relevant legal issue. Hold on a second. What page? I'm sorry, Your Honor, it's, this is excerpts of record 27. You're talking about the district court judge's ruling? This is the colloquy on the Rule 50 motion. Yes. So, after the, after counsel asked for... I'm sorry, what page, what lines are you... I'm referring to the, it's at the bottom of the page, Your Honor, the, that he said that this is line 14 through 19, where he says that the question of whether or not those things were believed by the decision-makers at the time, that's the only relevant legal issue before you. And the, the district court's response is on the next page, and the bottom line that he refers to is at line 8 on that page, where he says the motion's denied in part because the events on March 3rd are widely disputed. That's a non sequitur. The court got the legal test wrong. It asked the jury the wrong question, because the critical inquiry is not what happened on March 3rd. The question was, what did BNSF's decision-makers believe? That was submitted to the jury. Not, that question was... You don't dispute the jury instructions that were given to frame the debate, that basic defense. The instruction 15, Your Honor, provided the standard test that if BNSF were, had made the same decision, notwithstanding the protected activity, that it was not liable. However, the jury was not instructed on how to apply that defense. It didn't have to be. I, I believe that... They got the basic instruction that applied. You, you could, whoever was arguing the case in front of the jury could stand up there and say, we did, you know, we acted, you framed the argument around the instruction, and that's what, that's what happened. There was a dispute over, there was factual disputes throughout the trial. It was submitted to the jury, and the jury decided it. I, we don't believe that they were properly instructed or properly decided the, the question on the affirmative defense, and certainly the argument of... You would agree, though, the instructions that were given were proper. The instruction 15 was certainly a proper statement of the, of the affirmative defense, but they were not given the, the standard business judgment instruction on how to apply it. Moreover, they were not given the information they needed. The judge... What information weren't they given? The investigation transcripts. Why did they, didn't they, didn't each witness get up there and testify as to what they considered at the time they made their decision? The, the decision makers certainly testified as to what they... The judge said, if I'm not mistaken, the judge said it was duplicative, or... He said, and this is, again, a, a good indication of how the district court never grasped this essential distinction. He said, I'm not admitting the transcripts, and this is in the, the transcript at 689.70, this is in the supplemental excerpts at page 56. He said he's keeping them out because it's repetitive of what's happening in this trial. Well, again, that's exactly wrong. We weren't retrying the discipline investigation. The point of the transcripts was not to show what happened, but what the decision makers believed. And the argument that, well, they heard it... Did they, from the stand, did they testify as to what they believed at the time they acted? The decision makers said, we believed in good faith that Mr. Elliott was guilty of this offense, but they never... They, they, under oath, that's what they testified in front of the jury. Yes, Your Honor, but the jury never saw what they relied on. That never happens. What, here, let me give you an example of why the transcripts are so critically important. Sal Mastrella, okay? He was the independent witness who was out in the parking lot. The only, the only person to observe this incident. He was a union employee, he was not a manager, as the plaintiffs have suggested. And the investigation transcript, he testifies for 46 pages. He talks about where he was standing, what Mr. Kautzman said to him, what he saw. There's a back and forth with not just the hearing officer, but with Mr. Elliott's representative, and, in fact, with Mr. Elliott himself. Now, among the things that Mr. Mastrella says is, there was plenty of room for Mr. Elliott to have driven completely around Mr. Kautzman. Didn't have to run into him at all. You can't review Mr. Mastrella's testimony in context, in that investigation transcript, and come away with any impression other than he saw Mr. Elliott drive intentionally into Mr. Kautzman, and then get out and punch him. So, did, what was his name again, this fellow who testified? Sal Mastrella. Sal Mastrella. Did he testify at the trial? He did not, Your Honor. He, could you have called him at the trial? No, Your Honor. Why couldn't you have called him at the trial? As, as Mr. Marks testified, he had left BNSF at the time of the trial, and he was beyond the subpoena power. You didn't have any way to, could you take his, did you take his deposition? No, Your Honor. Could you have taken his deposition? I don't know the answer to that. I do know that BNSF was relying on the fact that his, that Mr. Mastrella's testimony was presented in great detail in these investigation transcripts, that they were then not able to submit to the court. Wait a minute, that didn't happen until trial. Depositions are pre-trial. Yes, pre-trial. As I said to Judge Paez, I'm not sure what the exact reason. I heard what you said to Judge Paez. Yeah, what, what, there's nothing in the record to indicate why Mr. Mastrella's deposition was not taken. I have non-record reasons to believe why it wasn't taken, which I'm willing to offer the court, but I don't want to exceed what's in the record. No, you didn't put it in the record. So, so in addition, so again, the transcript error is just a continuation of the same basic flaw where the district court was not applying this distinction between what happened and what the decision-makers believed. Now, if the court had applied... Wait a minute, counsel, counsel, could I, you said on the business judgment instruction that you proposed, the judge found duplicitous and confusing, but that's what you wanted to propose in instruction. Hold on a second. It's, it's in the excerpts of record, your Honor, at... I have it. It's number 8. Correct. It's excerpts of record 85. How does that differ from 15? Well, 15 explains what the standard is. Instruction 8 explains how to apply it, because when all instruction 15 told the jury was, well, if you find that BNSF would have made the same decision, you must fine for the railroad. But they were not told, well, how do you determine that? And the well-settled legal test is the way you determine that is you assess whether the railroad made this decision in good faith, whether they honestly believed it. And as this Court said in the Chong case, the plaintiff's site, and in many other cases, that's an assessment of whether the And didn't your, didn't counsel for the railroad get up and argue that to the jury? He did, your Honor. You should believe these witnesses for these reasons. He, he did, your Honor, but I think it's very well settled that, that, that argument of counsel is no substitute for instruction from the Court. In fact, it makes it even more important that the Court give that... Well, the, the, what's in, what's essential for the Court is the and on the defense. And he did. Well, your Honor, we, we respectfully disagree because the, the jury did not have, again, either the information to apply it or the, the legal standard under which to operate. It didn't know, well, how do we determine whether the railroad would have made the same decision or not? Now... Is your apparent position that the instruction number eight had to be given? That it had, no, well, I think the, all of the cases that have been decided under the FRSA have had some version of this instruction, but I don't know that there's ever been a case where a Court has needed to decide whether the instruction is required or not because it's always given. So I don't believe this issue has ever been directly presented, at least to an appellate court before. So in addition to the affirmative defense, 15, all the cases, all, it's always given in combination with business judgment? Some version of that. I mean, not necessarily those exact words, your Honor, but yes, some, some way of explaining to the jury how to apply the affirmative defense. And, and again, I mean, the jury heard the Court say several times, both in excluding the transcripts and, and, and these other comments that it made that, well, we're, he's going to conflate the two. The affirmative defense really just combines in with whether there was Even if you conclude that the railroad retaliated, it nevertheless is not liable if it would have made the same decision. So your argument is, is that failure to give this instruction was prejudicial error? Not just the instruction error, but the, but in combination with the failure to admit the investigation transcripts, which I'd submit as an even more serious error, but yes. Now, if the Court had applied the correct test, and again, it, it should have granted the railroad's directed verdict on this, because if you look at the evidence that the decision makers had before them, you really can't reach any other conclusion other than they believed in good faith that Mr. Elliott was guilty. Their argument that they couldn't have made that decision is just belied by the vast amount of evidence that is clearly not one-sided for Mr. Elliott. There certainly was sufficient material there to believe that he was guilty. So what they say instead, really, is, oh, it was all a conspiracy. They were all out to get him. It was all a setup. But there's two main problems with that. Number one, what they point to as a conspiracy is really just the allegation that Mr. Kautzman staged the parking lot incident, which is not the same thing. And second, they attack the railroad's collectively bargained discipline procedures. And they say, well, you should look at this, all, all of these alleged unfairnesses, the biased hearing officer, the unfair evidentiary rulings, the speed of decision, that's not evidence of conspiracy. And that's the point of the Eighth Circuit's recent decision in the DOL case, where it says a fact finder, quote, has no authority to punish BNSF for conducting disciplinary proceedings in accordance with the governing CBA and Railway Labor Act procedures that the fact finder may consider unfair. That has to be correct. And we submit that this Court should follow that same standard. Indeed, this Court's decision in Magnuson already points in that direction, where an arbitrator has made decisions based on procedural objections, which is exactly what happened here, excerpts of Record 383. Those conclusions are binding. If I may, I'd like to reserve the rest of my time for rebuttal. Certainly. Thank you, Your Honor. Good morning. May it please the Court, my name is Sarah Ames, and I represent Michael Elliott in this matter. We respectfully request that the This is a textbook example of why the Federal Rail Safety Act was amended in 2007 to include anti-retaliation provisions. A full jury after a six-day trial found that BNSF conspired to oust a high-profile safety advocate. The jury assessed punitive damages to punish BNSF for staging an anti-retaliation for Mr. Elliott's complaints about unsafe signals on BNSF's track. The record reflects that BNSF conceded in closing that the verdict depended on the credibility of the witnesses. That is, BNSF conceded that the evidence allowed for an inference of intentional retaliation. Additionally, BNSF conceded that Elliott adequately mitigated his economic damages, and that's at supplemental excerpt of Record 15. BNSF got a fair trial. The instructions allowed BNSF to make its arguments, and it did. With the Court's permission, I'd like to focus on the business judgment issue that my counsel has raised, and also talk a little bit about the FRSA, plain language of the FRSA for statutory reinstatement. The instructions fairly and adequately covered the issues. Credibility was central to this case. This is an abuse of discretion standard, as the Court knows. In reviewing the jury instructions, the Court must determine whether, considering the charge as a whole, the Court's instructions fairly and adequately covered the issues presented, correctly stated the law, and was not misleading. The jury was properly instructed that it was to find for BNSF only if it believed, by clear and BNSF made this argument to the jury and explained its burden at ER 330 through 332. It argued the same decision defense, and that BNSF had to be judged by what it knew at the time of the investigations. One important issue in this case is the wealth of evidence of pretext. We proved at trial that the investigation transcripts were in fact manipulated to result in a predetermined outcome, Mr. Elliot's dismissal. And not only did witnesses testify differently under oath at trial than they did in these investigative hearings, and not only did BNSF present faked evidence to both its own tribunal and to the FRA, but it also withheld evidence from Mr. Elliot that proved that he had been truthful in 2007 when he said that, when he and his witness, Mr. Beach, said that they had reported Mr. Elliot's felonies. And I would call the court's attention specifically to supplemental excerpt of record number 210, which is an email between Mr. Kautzman, Mr. Hackney, and two other important witnesses who BNSF declined to allow Mr. Elliot to cross-examine at his investigative hearing. But that email references the certification aspect of Mr. Elliot's present situation. The certification aspect is specifically related to his felony conviction for a DUI. Pretext is the same decision inquiry. An instruction on the business judgment rule would be duplicative because the evaluation is whether or not they were operating in good faith. The court is not obligated to give repetitive, cumulative instructions, and the court ruled in its discretion that, given the evidence before the court, the instruction would have been confusing and added ambiguity to the jury's task. Counsel, I'm sure you're correct that the standard is abuse of discretion on the lines that you mentioned. But how do you answer Mr. Monroe's argument that in all the cases brought under this Act, in his view, there's always been some type of business judgment instruction? I don't dispute that, Your Honor. The difference is the majority of those cases were decided at the summary judgment stage. In the couple that were not decided at the summary judgment stage, there was no evidence in the record that BNSF did act in a dishonest way. Here, again, the evidence of pretext is replete in the transcript, and if the decision is about judging BNSF's credibility, that was done. The jury assessed punitive damages in this case. But to answer Your Honor's question, number one, there is a case, Armstrong, that I believe BNSF has brought to the court's attention. And in that case, the business judgment rule that was offered and granted, number one, there was no evidence in that case that there was dishonesty on the part of BNSF, unlike this case. And number two, the instruction that was offered specifically referenced the sincere, honest belief standard. And if you look at the instruction that was offered in this case, that language is not there. So the instruction is incomplete that BNSF offered, and the evidence was such that the business judgment instruction was not warranted. Do you know of any case where we've said that, where a court has said that the business instruction along the lines that he, that they offered? That it's mandatory? That it's mandatory and must be given? I do not know of a case where it's, where it's, where it says that it must be given, Your Honor. On the point that Mr. Mastrullo was not called at trial, and what, and BNSF chose not to take his deposition. BNSF chose not to call those witnesses. In its briefing, it argues that not only did it not call the same witnesses, but it didn't ask the same questions of the witnesses that it did call. That was entirely within BNSF's own discretion, and therefore an invited error on that point. So when they got up to argue the case, I haven't read the, I didn't read the closing arguments, but when they got up to argue the case, did they make this argument how they acted in good faith and were sincere? They did, Your Honor, and, and specifically if you look at ER 330 through 332, they made that argument that, that, that they had to be judged on the basis of their sincere, honest belief at the time of the investigation. The transcript was excluded because it was replete with hearsay. It is not, it was not under oath before the court. The jury did not have the opportunity to, to examine and weigh the credibility of the witnesses. And again, the way you decide whether they would have made the same decision is through assessing BNSF's sincere, honest belief. So the, the question of pretext and honest belief and the same decision are all inextricably linked in this case. BNSF should not be rewarded for submitting inaccurate instructions that misstate the law and then be heard to complain that the court failed to give its instruction. Again, there, there is no error here. If there were error, it would be harmless because BNSF argued its same decision defense. It cannot credibly say that it was denied the opportunity to make an argument. And again, finally, on that point, punitive damages show that the jury resoundingly rejected BNSF's sincere, honest belief. Not only did it assess punitive damages, it assessed the statutory maximum. of punitive damages. I'd like to move on to the front pay issue, if, if the court, with the court's permission. This is a statutory remedy under the FRSA. This is different from Title VII, the Air 21 statutes, the FMLA, and ERISA, where reinstatement is explicitly denoted under the statutory language as equitable. So the cases that BNSF has brought to the court's attention, like Traxler and Cassino, are not relevant for the point that reinstatement is always an equitable remedy. It is, in fact, under the FRSA, a statutory remedy. And if the court looks at the DOL case, the BNSF versus DOL case that, that BNSF has raised here, the very last paragraph of that opinion says that BNSF objected to the plaintiff being reinstated on remand. And the court noted that the statutory language of the FRSA is mandatory, that reinstatement shall occur if the plaintiff is, is successful in his claims. Substantial evidence also supports that compensatory damages support the verdict. Mr. Elliott lost his career. He was devastated by these events. He lost his standing in front of the people who mattered to him, his union members who had elected him to advocate on their behalf for safety, a position that he, that he was exceptionally proud of and that he vigorously advocated for on behalf of his union. Secondly, Mr. Jones, after this was all over, falsely told the FRA that Mr. Elliott had submitted a false, a false driver's license certificate, relying on the faked evidence of the 2005 driver's license certificate. Mr. Jones never, never corrected that, that misstatement to the FRA. BNSF confusingly says that Mr. Jones did not tell a lie to the FRA, but I think that the language of the letter itself belies that point. Both parties submitted the front pay amount to the jury. Making, so the, the, if the, so, so we, pardon me. So essentially we agreed in advance that reinstatement in this case was inappropriate and BNSF asked the jury to fine for front pay. And then in, in closing argument again, it admitted that he mitigated his damages. So even if the judge were to decide that he had the equitable power under remitted or to reduce the verdict on, on some ground, he would have no basis to do so because it was conceded that Mr. Elliott mitigated. Counsel, just to clarify, BNSF proposed the instruction on front pay that was given? It didn't impose, no, the judge, Judge Layton did not give the jury a, the, he, Judge Layton gave a general verdict. And both sides had submitted a verdict form that proposed front pay. But Judge Layton submitted a, a general verdict in his discretion. And when he told the parties that he was not going to do an advisory opinion, BNSF never objected to that. He, in his damages instruction though, he instructed them that they could award future. Yes. Yes. Was there any objection to that? No, Your Honor. So if the court has no further questions, I'll relinquish the remainder of my time. No questions here. Thank you. Judge Fischer? Thank you. Okay. I'm hearing no questions. Mr. Monroe, could you please handle your rebuttal? Thank you, Your Honor. Just a few very quick things. On the jury instruction point, I'd refer the court to Walker versus AT&T. It is not a decision by this circuit. 995 F. Second, 846. Eight circuit decision that addresses the business judgment instruction. With respect to the back pay, reinstatement, equitable relief, counsel and I just disagree with what happened. This is from the transcript at 978 where the court said, if reinstatement is in the case, is that a jury question? And Mr. Robbins, the BNSF trial counsel, said, we don't believe it is. We believe it is an equitable remedy that would be for the court. I don't see how that could be clearer that we believe that it was not for the jury. With respect to punitives, again, the jury can find retaliation and yet is still obligated to find no liability. So the conclusion about punitive says nothing about whether it would have gone on to find the affirmative defense had it been given the information in the investigation transcripts. With respect to pretext, counsel is again attacking the collectively bargained standards. Nothing about the decision that was implausible, inconsistent, or incoherent. They're not saying that BNSF couldn't have found against Mr. Elliott. They're just saying the whole process was unfair. But note that all of their process objections go to the felony conviction. None of that goes to what happened in the parking lot on March 3rd. And again, I believe that this court should follow the Eighth Circuit's decision with respect to whether those collectively bargained procedures can be evidence of retaliation or not. With that, I'm happy to address any additional questions the court may have. Any questions from the other judges? No, thank you. None here, so thank you, Mr. Monroe. Thank you, Your Honors. Thank you, both sides, for your excellent arguments, and the Elliott case shall be submitted.
judges: Fisher, Gould, Paez